UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:05 CR 692 SNL |
| | ) | DDN |
| MICHAEL A. WHITE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the Court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on February 14, 2006.

Defendant Michael A. White has moved to suppress statements (Doc. 13) and to suppress evidence (Doc. 14). The United States has moved for a pretrial determination of the admissibility of defendant's statements (Doc. 12). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. On October 4, 2004, St. Louis Metropolitan Police Detective Larry Davis applied to the Circuit Court of the City of St. Louis for a search warrant. The police sought to search 3931 Utah St. in St. Louis for marijuana, packaging materials, diluents, scales, weapons, and currency obtained from the illegal sale of narcotics. Gov. Ex. 2. In support of his application, Det. Davis submitted his written, sworn affidavit. In the affidavit he set forth information provided by a reliable[1] confidential informant (CI) on September 24, 2004. The CI stated that he/she had seen Michael White on many occasions possess marijuana at 3931 Utah. The CI described White as a white male,

---

[1]Det. Davis stated that this CI had provided information in the past that resulted in two arrests for possession of controlled substances and that warrants were issued against those arrested.

approximately 45 years of age, between five feet seven inches and five feet nine inches tall, and weighing about 140 pounds. The affidavit recounted that, after the CI provided the information, the CI took Det. Davis to 3931 Utah and identified the subject residence, and the CI identified White when he came out of the residence and entered an automobile. The affidavit states that on September 27, 2004, Det. Davis surreptitiously surveilled 3931 Utah and saw White sitting on the front porch of the residence and engage in two exchange transactions with two white males; White appeared to hand over a small item he took from his pocket in exchange for money. White then entered the residence. Later, during the same surveillance, a black woman went to 3931 Utah and knocked on the door. The affidavit stated that White opened the door, came outside, and had a transaction similar to the one he had with the two males earlier. The affidavit stated that on October 4, 2004, Det. Davis contacted the CI who said he/she had been inside 3931 Utah within the past 24 hours and saw White with a large quantity of marijuana. The affidavit also stated that Det. Davis received corroborating information from official record sources identifying White and showing his residence as 3931 Utah and that he had prior arrests for weapons law violations and assaults. Gov. Ex. 2 at 2-3. At 4:00 p.m. on October 4, 2004, Circuit Judge Joan M. Berger issued a search warrant for 3931 Utah. Id. at 1.

    2. The search warrant was executed on October 5, 2004. After the pre-search coordination meeting of the participating police officers, the police surveilled 3931 Utah. When the police saw White come out of 3931 Utah and drive away in his automobile, Det. Anthony Boone and Det. Davis, dressed in police raid equipment and carrying weapons, stopped his vehicle at Spring and Utah. Boone and Davis went up to the car and told White to get out of the vehicle, which he did. The police told White that they had a search warrant for his residence and that he was the target of the warrant. The officers asked White for identification and he gave them his whole pedigree. White stated that he had a little bit of "weed" in the house. Det. Davis then orally advised White of his constitutional rights to remain silent and to counsel by reading them from a card. When asked whether he understood his rights, White said that he understood them. The officers asked White for the key to his residence, which he gave them. After being advised of his rights, and at the scene of the stop, White

told the officers that he had a little "weed" in his house. During this time, White was nervous but he complied with the officers' directions.

    3.    The police then returned to 3931 Utah with White. With White kept outside, the police entered the residence with a key which belonged to White. After the police satisfied themselves that the residence was secure, they brought White inside the residence and placed him in the living room secured to a chair. Det. Boone asked White whether there were any weapons in the residence. White stated that a gun and "weed" were in the safe under the dining room table. White provided the combination code for the safe. As soon as the police opened the safe, they smelled a strong odor of marijuana. Without being asked any question, White said, "That's my gun and weed. That's all I have in the house." After the firearm and marijuana were seized, Det. Davis arrested him for possessing these items and again orally advised him of his constitutional rights to remain silent and to counsel. The officers then found in the residence and seized a triple beam scale and several bags of marijuana in the butler's pantry, and a large amount of marijuana in the basement.

    4.    At this point White said he did not want to talk any more. He was asked no more questions.

    5.    At all times on October 5, 2004, when he was in the custody of the police, White was cooperative and compliant. The police made no threat or promise to get White to cooperate. Throughout the incident, White was coherent and attentive to what was going on.

## **DISCUSSION**

In support of his motions to suppress, defendant argues that there was no probable cause for the issuance of the search warrant. The undersigned disagrees. The issue before this court when reviewing the validity of the issuance of a search warrant is whether the supporting materials gave the issuing judge a substantial basis for concluding that probable cause existed for the issuance of the warrant. United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994); United States v. Peterson, 867 F.2d 1110, 1113 (8th Cir. 1989); United States v. Martin, 866 F.2d 972, 976 (8th Cir. 1989) (citing Illinois v. Gates, 462 U.S. 213, 238-39 (1983)). Probable cause means a "fair probability that . . . evidence of a crime will be found in a particular place," given the circumstances set

forth in the affidavit. United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999) (quoting Illinois v. Gates, 462 U.S. at 238).

In the case at bar, Det. Davis's affidavit gave Judge Berger a substantial basis for finding that probable cause existed for the issuance of the search warrant. A reliable confidential informant told the officer about first hand information that Michael White was possessing marijuana on or before September 24, 2004, at 3931 Utah. Later on September 24, Det. Davis and the CI corroborated this information. Then during the week of September 27, Det. Davis obtained independent information of drug trafficking by his observation of the residence. Then, on October 4, the CI gave Det. Davis a first hand statement that White was possessing a large amount of marijuana on that date in 3931 Utah. Further independent research corroborated White's relationship to the residence.

For these reasons, the search warrant was lawfully issued and the items of evidence seized from defendant and from his residence should not be suppressed.

When he was initially stopped in his vehicle by the police, the police had probable cause to arrest him for drug trafficking. Probable cause to arrest without a warrant exists when the police have information sufficient to cause a reasonable person to believe that the defendant had committed an offense or was then committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Nevils, 897 F.2d 300, 309 (8th Cir.), cert. denied, 498 U.S. 844 (1990) (probable cause can be found in the information set forth in a search warrant affidavit). Clearly, for the reasons set forth above regarding the probable cause to issue the search warrant, the officers had probable cause to arrest defendant for the same reasons.

None of the statements defendant made should be suppressed. The government has the burden of establishing the constitutional admissibility of a defendant's statements by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 169 (1986); Lego v. Twomey, 404 U.S. 477, 489 (1972). The admissibility of defendant White's statements depends upon whether they were constitutionally voluntary, Connelly, 479 U.S. at 163-67; and, because the statements were made during police interrogation while the defendant was in custody, whether he had been advised of his rights, as prescribed by Miranda v. Arizona, 384 U.S. 436 (1966), and, if

so, whether the defendant knowingly and voluntarily waived his Miranda rights, North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979).

Statements are constitutionally involuntary, if they are the result of government overreaching, such as physical or mental coercion, deception, or intimidation. Connelly, 479 U.S. at 169-70; Moran v. Burbine, 475 U.S. 412, 421 (1986); United States v. Jordan, 150 F.3d 895, 898 (8th Cir. 1998); United States v. Goudreau, 854 F.2d 1097, 1099 (8th Cir. 1988).

In this case, no evidence established any overreaching, coercion, or intimidation by the officers that resulted in any of White's statements. His statements, which were custodial, followed his being advised of his Miranda rights and he said he understood them.

Whereupon,

**IT IS HEREBY ORDERED** that the motion of the government for a pretrial determination of the admissibility of defendant's statements (Doc. 12) is denied as moot.

**IT IS HEREBY RECOMMENDED** that the motions of defendant to suppress statements (Doc. 13) and to suppress evidence (Doc. 14) be denied.

The parties are advised they have ten (10) days to file written objections to this Order and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

/s/ David D. Noce
_____
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on February 16, 2006.